UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMILOLA ANIMASHAUN,

                               Plaintiff,
  v.                                                           9:21-CV-0372
                                                             (MAD/TWD)

J.J. TOOHILL, et al.,

                               Defendants.
_____

APPEARANCES:

DAMILOLA ANIMASHAUN
389078
Plaintiff, pro se
Baltimore County Detention Center
720 Bosley Avenue
Towson, MD 21204

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

I.      **INTRODUCTION**

     The Clerk has sent to the Court for review an amended complaint submitted by pro se plaintiff Damilola Animashaun asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with a motion to stay the action.  *See* Dkt. No. 11 ("Am. Compl."); Dkt. No. 12 ("Motion to Stay").[1]  Plaintiff, who is incarcerated at the Baltimore County Detention

_____

[1] Plaintiff commenced this action by filing a complaint and application to proceed in forma pauperis ("IFP").  Dkt. No. 1, 2.  By Order entered on April 2, 2021, the case was administratively closed based on plaintiff's failure to comply with the Court's filing fee requirement.  Dkt. No. 3.  Thereafter, plaintiff filed a second application to proceed IFP, along with the inmate authorization form required in this District, and the Clerk was directed to reopen this action and restore it to the Court's active docket.  Dkt. Nos. 4, 5, 6.  By Decision and Order entered on June 8, 2021, the Court denied plaintiff's request to proceed IFP pursuant to 28 U.S.C. § 1915(g) based on a determination that plaintiff accumulated three "strikes" prior to filing his complaint, and was not entitled to the "imminent danger" exception.  *See generally*, Dkt. No. 7 ("June 2021 Order").  In addition,

Center, has paid the filing fee for this action.[2]

## II. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. Governing Legal Standard

Pursuant to 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se pleading, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated

---

plaintiff was advised that if he wished to proceed with this action, he had to pay the Court's filing fee of four hundred and two dollars ($402.00) in full. *Id*. at 7.

[2] Shortly after plaintiff paid the filing fee in full, he submitted his amended complaint and Motion to Stay. Since the amended complaint is now the operative pleading, the Court need not consider the original complaint as part of its sufficiency review herein.

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

    **B.    Summary of the Amended Complaint**

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Upstate Correctional Facility ("Upstate C.F.") and Mid-State Correctional Facility ("Mid-State C.F.") in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Am. Compl. The following facts are set forth as

alleged by plaintiff in his amended complaint.[3]

On April 9, 2018, plaintiff was incarcerated at Upstate C.F.  Am. Compl. at 5.  At approximately 3:35 a.m. on this date, plaintiff was involved in an altercation with his "bunkmate[.]"  Am. Compl. at 5.  During the altercation, plaintiff "notic[ed]" defendant Corrections Officer Toohill, who was making security rounds, and "motioned and screamed [to him] for help."  *Id.*  Defendant Toohill then "called in for more officers" to assist at the scene.  *Id.*

Thereafter, Corrections Officers Tourville, Davey, and Patrick -- all named as defendants -- arrived at the scene.  Am. Compl. at 5.  Defendant Patrick, who was holding a "shield[,]" entered the cell and struck plaintiff in "the upper torso[,]" which "forc[ed] [him] to the floor[.]"  *Id.*  Defendant Tourville then applied force to plaintiff's left arm to control him.  *Id.*

At approximately 4:15 a.m., plaintiff was examined by a nurse in the "lower holding pen on 10 block."  Am. Compl. at 6.  At the time, plaintiff's injuries included "scrapes" on his hands, "a split upper and lower lip[,]" and swelling in his left hand.  *Id.*  Thereafter, a "medical screening" was performed on plaintiff's left hand, which revealed a fracture to "metacarpal bones."  *Id.*

At some point, surgery was performed on plaintiff's left hand, and he was provided with "a cast and brace[.]"  Am. Compl. at 6-8, 13.  Plaintiff was also provided with medication for his pain.  *Id.* at 7, 13.

In May, 2018, a doctor prescribed plaintiff "physical therapy . . . to rehabilitate [his] left hand[.]"  Am. Compl. at 12.  However, one or more unidentified officials from Upstate C.F.

---

[3] Plaintiff submitted an affidavit and certain documents with his amended complaint, *see* Am. Compl. at 15-35, Dkt. No. 11-1, which the Court has also considered as part of its sufficiency review herein.

falsely reported that plaintiff refused his therapy sessions on multiple occasions in order to deny him this treatment. *Id.* at 12, 23.

At some point after July 23, 2018, plaintiff was transferred to Mid-State C.F. Am. Compl. at 23. Although plaintiff filed grievances regarding his need for physical therapy, officials at Mid-State C.F. continued to deny him this treatment roughly one year after it was scheduled. *Id.* at 12-13. As a result of not receiving physical therapy, "proper healing did not occur[,]" and plaintiff currently has "a difficult time when trying to grab, hold[,] or motion . . . with [his] left hand." *Id.* at 13.

In addition to the aforementioned individuals, plaintiff has named the following parties as defendants: (1) "The Supervisors" of defendants Toohill, Patrick, Davey, and Tourville; and (2) unidentified Upstate C.F. and Mid-State C.F. officials who denied him physical therapy. *See* Am. Compl. at 1, 4, 9-13.

Liberally construed, the amended complaint asserts the following claims against the named defendants in their individual capacities: (1) Eighth Amendment excessive force and failure-to-intervene claims against defendants Toohill, Patrick, Davey, Tourville, and their "Supervisors"; and (2) Eighth Amendment medical indifference claims against unidentified Upstate C.F. and Mid-State C.F. officials who denied him access to physical therapy.

Plaintiff requests monetary damages. Am. Compl. at 8, 11, 14. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C.   Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution

5

and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

### 1. Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are

incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia*, *Estelle*).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[4]

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Toohill, Patrick, Davey, and Tourville survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's Eighth Amendment claims against "The Supervisors" of defendants Toohill, Patrick, Davey, and Tourville for two reasons.  First, the manner in which plaintiff has identified these officials is improper.  *See, e.g., Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94 (S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against "members of the

---

[4] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

'Special Search Team' and 'ESU Officers'" and noting that, "[t]o the extent that [plaintiff] does not know the names of the members of the Special Search Team or ESU Officers involved, he may name 'John Doe' defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should Little chose to do so"); *Williams v. 120 PCT Undercover*, No. 11-CV-4690, 2011 WL 13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing complaint without prejudice where plaintiff's claims provided information about the alleged constitutional deprivations, but were brought against "the 120 Precinct and District 9, a police precinct and district of the New York City Police Department").

      Second, even if the Court were to overlook this pleading deficiency, plaintiff has named "The Supervisors" as defendants based solely on a conclusory allegation that the officials who allegedly subjected him to excessive force must have been inadequately trained.  *See* Am. Compl. at 9.  The amended complaint, however, lacks any allegations from which the Court might plausibly infer that this is true.  Plaintiff does not allege, for example, that (1) defendants Toohill, Patrick, Davey, and/or Tourville had a history of wrongfully subjecting inmates to excessive force, which was known to their supervisors, or (2) other officials at Upstate C.F. have a history of using excessive force against inmates in a manner similar to the alleged forced used against plaintiff, under similar circumstances.  *See, e.g., Valverde v. Folks*, No. 19-CV-8080, 2020 WL 5849515, at *7 (S.D.N.Y. Sept. 30, 2020) ("Plaintiff has failed to plead personal involvement by Capra with respect to the claim for failure to train because Plaintiff does not allege that Capra knew or had reason to know there was a risk of misconduct by the correctional officers and that Capra deliberately disregarded that risk. . . . Specifically, Plaintiff has not alleged that Capra 'had direct responsibility for

8

monitoring the alleged violation or that there had been a 'history of previous episodes' putting [Capra] on notice of the problem.'" (quoting *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013)); *Martin v. Patterson*, No. 09-CV-1372, 2010 WL 3033796, at *3 (N.D.N.Y. July 16, 2010) ("Plaintiff's conclusory allegations that defendants failed to properly train staff and investigate the matter, and that current policy condones excessive force, is not enough to establish that [defendant] was aware of any history of excessive force toward plaintiff or at [the prison] in general."), *report and recommendation adopted by* 2010 WL 3033809 (N.D.N.Y. Aug. 3, 2010).

Accordingly, plaintiff's Eighth Amendment claims against "The Supervisors" of defendants Toohill, Patrick, Davey, and Tourville are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104.  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).  Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  "Second, the defendant must act with a

9

sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Blyden*, 186 F.3d at 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

As an initial matter, plaintiff has failed to name any individuals who were personally involved in allegedly denying him access to physical therapy treatment. Instead, he improperly names "Upstate Correction[al] Facility" and "Mid-State Correction[al] Facility [officials] responsible for [denying him access to physical therapy" as defendants. For this reason alone, plaintiff's medical indifference claims must be dismissed. *See, e.g., Little*, 51 F. Supp. 3d at 493-94.

In addition, and setting aside this pleading defect, the Court has no basis to plausibly infer from plaintiff's vague allegation that he has "a difficult time when trying to grab, hold[,] or motion [with his] left hand" that denying him access to a few weeks of physical therapy more than three years ago constituted a sufficiently serious deprivation in objective terms. *See, e.g., Stapleton v. Pagano*, No. 19-CV-952, 2021 WL 3501163, at *5 (S.D.N.Y. Aug. 9, 2021) ("Plaintiff's threadbare allegations—that the lack of physical therapy caused 'deteriorat[ion]' and 'pain' in his knee . . . —are insufficient, without more, to satisfy the first element of a deliberate indifference claim[.]" (citing several cases including *Abreu v. Brown*, No. 14-CV-6599, 2018 WL 565280, at *5 (W.D.N.Y. Jan. 22, 2018) (vague allegation that defendants denied the plaintiff physical and occupational therapy following hand surgery failed to state a claim)).

Furthermore, with respect to the subjective element of plaintiff's medical indifference claim, the amended complaint is devoid of any allegations which plausibly suggest that any medical professional knew that plaintiff was experiencing complications with his left hand as a result of not having access to physical therapy, and yet nonetheless disregarded his treatment needs.  Indeed, plaintiff does not allege that he made sick-call requests or otherwise spoke with any medical professionals regarding complications with his left hand at any point, let alone that he did so and had his concerns ignored.  Instead, plaintiff alleges only that he submitted two grievances in 2019 about being denied physical therapy sessions a year earlier, which did not resolve the problem.  *See* Am. Compl. at 12-13.  The responses to the grievances, however, make clear that (1) plaintiff's hand was x-rayed in June, 2019, and the results were normal, (2) plaintiff was provided with medication for his pain, and (3) plaintiff was free to raise any further concerns with medical staff through sick-call procedures. *See, e.g.*, Dkt. No. 11-1 at 3, 5.  Moreover, the law is well-settled that allegations of a disagreement with medical treatment or misdiagnosis of a condition are insufficient to state an Eighth Amendment claim.  *See, e.g.*, *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." (citing *Estelle*, 429 U.S. at 107)); *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment."). *McKenna v. Wright*, No. 01-

11

CV-6571, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) ("The mere fact that the defendant physicians may have made a different medical decision with respect to Plaintiff's treatment than that purportedly recommended by Dr. Maliakkal does not indicate that they acted for culpable reasons.").

Accordingly, plaintiff's medical indifference claims against unidentified Upstate C.F. and Mid-State C.F. officials who denied him access to physical therapy are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III.    MOTION TO STAY

In his Motion to Stay, plaintiff requests "a temporary pause on this lawsuit" because he is awaiting medical records to support his Section 1983 claims, which he requested from Mid-State C.F. more than a year ago.  *See* Motion to Stay at 1.

As an initial matter, this case cannot be litigated further until the completion of service on one or more of the remaining defendants, and plaintiff does not need to be in possession of the documents he requested from Mid-State C.F. in order for the remaining defendants to be served.  Moreover, in the event one or more of the defendants are served, a response to the amended complaint is required.  Should one or more defendants answer the amended complaint, a Mandatory Pretrial Scheduling Order shall issue, which will direct the exchange of initial disclosures and set a schedule for plaintiff to request additional documents from the answering defendant(s).  The records that plaintiff has requested from Mid-State C.F. will in all likelihood be produced as part of initial disclosures, but may also be requested by plaintiff at the appropriate time if such documents are not otherwise produced.

For these reasons, plaintiff's Motion to Stay is denied without prejudice as

unnecessary.

## IV.     SERVICE OF PROCESS

Where a plaintiff has been authorized by the Court to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service is appointed to effect service of process of the summons and operative pleading on his behalf.  *See* Fed. R. Civ. P. 4(c)(2) (U.S. Marshal must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [in forma pauperis] cases.").  However, in this case, plaintiff's application to proceed IFP was denied pursuant to 28 U.S.C. § 1915(g).  *See* June 2021 Order.  As a result, plaintiff is responsible for serving the summons and amended complaint on the surviving defendants.

Rule 4(c) of the Federal Rules of Civil Procedure also provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3).  Therefore, in order to advance the disposition of this action, and in light of the fact that plaintiff is proceeding pro se, plaintiff is advised that he may submit a motion requesting service by the United States Marshal on the following conditions: (1) plaintiff must pay the service fee due to the U.S. Marshal in full in advance by money order or certified check;[5] and (2) he must provide all necessary papers for service, including a completed U.S. Marshals Form (USM-285 Form) for each of the remaining four defendants, and four copies of the amended

---

[5] Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and amended complaint. The cost of service by mail on the surviving defendants in this action is therefore $32.00. Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

13

complaint. Plaintiff is directed to send the service documents and payment of the service fee to the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Toohill, Patrick, Davey, and Tourville **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED** that the remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[6] and it is further

**ORDERED** that the Clerk is directed to **TERMINATE** "The Supervisors" of defendants Toohill, Patrick, Davey, and Tourville, "Upstate Correctional Facility Responsible Parties" and "Mid-State Correctional Facility Responsible Parties" as defendants; and it is further

**ORDERED** that plaintiff's Motion to Stay (Dkt. No. 12) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them to plaintiff. It is plaintiff's responsibility to immediately serve defendants Toohill, Patrick, Davey, and Tourville

---

[6] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file a proper motion to amend, together with a proposed second amended complaint. Any proposed amended complaint shall, if accepted, supersede and replace the amended complaint in its entirety, and therefore must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any proposed amended pleading filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

each with a summons and a copy of his amended complaint in accordance with the Federal Rules of Civil Procedure. The Clerk shall forward a copy of the summons and amended complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

    **ORDERED** that plaintiff may submit a motion requesting service of process by the U.S. Marshal in accordance with Federal Rule of Civil Procedure 4(c)(3), together with the applicable service fee, to the limited extent set forth above. The Clerk shall send plaintiff four blank USM-285 Forms for his use should he choose to request such service. As a courtesy, the Clerk shall also send plaintiff one copy of his amended complaint for his use in making additional copies;[7] and it is further

    **ORDERED** that upon receipt from the Clerk of plaintiff's payment of the service fee and the documents required for service, the U.S. Marshal shall attempt to serve the summons and amended complaint upon defendants Toohill, Patrick, Davey, and Tourville in accordance with Rule 4 of the Federal Rules of Civil Procedure; and it is further

    **ORDERED** that, if plaintiff requests service by the U.S. Marshal, he must comply with any additional requests from the U.S. Marshal for documents that are necessary to effectuate service, and must provide payment in advance to the U.S. Marshal for any subsequent service attempt if the original attempt to serve any defendant is unsuccessful; and it is further

    **ORDERED** that upon the completion of service, a response to the amended complaint be filed by defendants Toohill, Patrick, Davey, and Tourville, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

---

    [7] Plaintiff may, if he so chooses, make copies of his amended complaint for service on double-sided paper.

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: October 4, 2021
       Albany, NY

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge