**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**DAMILOLA ANIMASHAUN,**

                       **Plaintiff,**

  vs.
                                              **9:21-CV-0372**
                                              **(MAD/TWD)**

**J.J. TOOHILL, et al.,**

                       **Defendant.**

---

**APPEARANCES:**                                      **OF COUNSEL:**

**DAMILOLA ANIMASHAUN**
494292
Maryland Correctional Institution – Hagerstown
8601 Roxbury Road
Hagerstown, Maryland 21746
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK STATE**                      **RACHAEL OUIMET, AAG**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 1, 2021, Plaintiff Damilola Animashaun commenced this *pro se* action pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff subsequently moved for leave to proceed *in forma pauperis*. *See* Dkt. No. 2. In May of 2021, following a bench trial, in an unrelated criminal matter, Plaintiff was convicted and sentenced to twenty years of incarceration in Baltimore,

1

Maryland. *See* Dkt. No. 78-2 at ¶ 7 (citing *Animashaun v. Maryland*, No. C-03-CR-19-003763, 2022 WL 4533812, *1 (Md. Ct. Spec. App. Sept. 28, 2022)). Plaintiff filed a second amended complaint, asserting allegations of wrongdoing that occurred while he was incarcerated at Upstate Correctional Facility and Mid-State Correctional Facility in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The second amended complaint alleges Eighth Amendment excessive force and failure to intervene claims against corrections officers. *See* Dkt. No. 21. The Court accepted the amended complaint for filing on November 18, 2021. *See id.* On June 22, 2023, Magistrate Judge Thérése Dancks issued an Order and Report-Recommendation recommending that: (1) the Eighth Amendment excessive force and failure to intervene claims against corrections officer ("C.O.") B. Chevier be dismissed; (2) the Eighth Amendment excessive force and failure to intervene claims against C.O. J.J. Toohill, C.O. Davey, and C.O. Patrick proceed to trial; (3) the Eighth Amendment excessive force claims against C.O. Z. Holmes and Sgt. W. Hoffnagle be dismissed; (4) the Eighth Amendment failure to intervene claims against C.O. Holmes and Sgt. Hoffnagle proceed to trial; and (5) the Eighth Amendment excessive force claim against C.O. Tourville proceed to trial. *See* Dkt. No. 61. Neither party filed objections, and on September 19, 2023, the Court adopted Magistrate Judge Dancks' June 22, 2023, Order and Report-Recommendation in its entirety. *See* Dkt. No. 72.

On August 1, 2023, Plaintiff was released from DOCCS' custody and immediately transferred into the custody of Maryland. *See* Dkt. No. 66. On January 5, 2024, Plaintiff submitted a letter requesting the form application to request civil subpoenas. *See* Dkt. No. 77. On January 22, 2024, Defendants filed a motion to dismiss for lack of prosecution. *See* Dkt. No. 78. Plaintiff filed a response in opposition on February 12, 2024. *See* Dkt. No. 81. Defendants replied in further support of their motion on February 29, 2024. *See* Dkt. No. 82. Currently

2

before the Court is Defendants' motion to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The Court assumes the parties' familiarity with the relevant factual background in this matter and, to the extent consistent with the record, adopts the factual recitation contained in the October 4, 2021, Decision and Order, *see* Dkt. No. 13 at 3-5, and Magistrate Judge Dancks' June 22, 2023, Order and Report Recommendation. *See* Dkt. No. 61 at 4-10.

## III. DISCUSSION

**A.    Legal Standards**

Rule 41(b) provides that,

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

FED.R.CIV.P. 41(b). Dismissing an action with prejudice under this rule is a "harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir.2001) (internal quotation marks and citation omitted). Despite the harshness of this remedy, Rule 41(b) gives the district court explicit authority to dismiss a case where the plaintiff fails to comply with the court's orders or otherwise fails to prosecute the action "diligently." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)

Although Rule 41 of the Federal Rules of Civil Procedure permits federal courts to dismiss an action for failure to prosecute, *see* FED. R. CIV. P. 41(b), this authority "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily

vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *see also Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009).  The Second Circuit has "fashioned guiding rules that limit a trial court's discretion in this context[.]"  *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).  The *Drake* factors consider whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Id.* In making use of this test, no one factor is dispositive and the propriety of granting dismissal for failure to prosecute must be viewed in light of the record as a whole.  *See id.*

**B.    Analysis**

   *1. Duration of delay*

The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of "significant duration."  *Id.* at 255 (citing *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001)).  "[T]here is no 'magic number'" when determining whether the length of the delay was of significant duration.  *Copeland v. Rosen*, 194 F.R.D. 127, 132 (S.D.N.Y. 2000).

As an initial matter, the Court notes that unlike many prior cases where the Court has granted a motion to dismiss for failure to prosecute, Plaintiff has communicated with the Court and responded to motions in a timely manner.  *C.f. Delgado v. Delvin*, No. 9:21-CV-00120, 2023 WL 4627634, *3 (N.D.N.Y. Apr. 20, 2023) (collecting cases and noting that, "[u]pon review of the docket, Plaintiff has failed to communicate as directed with the Court since his release from

4

incarceration on September 20, 2022, seven months ago.  Courts have repeatedly determined that a plaintiff's failure to comply with court orders for several months weighs in favor of dismissal").

    Defendants argue that there is nevertheless a significant delay in Plaintiff's ability to appear at trial and continue to prosecute this action, because he is currently incarcerated in Maryland, and is not set to be released until 2035.  *See* Dkt. No. 78-2 at ¶ 36; Dkt. No. 78-1 at 6. Defendants argue that "Plaintiff is at fault for his inability to continue prosecuting this action" because "[t]here was proof beyond a reasonable doubt that Plaintiff knowingly and voluntarily engaged in the behavior that resulted in his arrest and subsequent conviction of second degree rape and false imprisonment in Maryland."  Dkt. No. 78-1 at 6.  Defendants rely on *Cooper v. Cashin*, as support for the argument that a plaintiff is at fault for his inability to attend trial and prosecute his case where "probable cause exists to believe that [the p]laintiff knowingly and voluntarily chose to engage in behavior that might result in his arrest," leading to incarceration. *Cooper v. Cashin,* No. 9:18-CV-0762, 2021 WL 3287737, *3 (N.D.N.Y. Aug. 2, 2021); *see also* Dkt. No. 78-1 at 6.

    Plaintiff argues that his incarceration in Maryland does not mean he will necessarily be unable to prosecute the case until 2035 because he can appear virtually at trial.  *See* Dkt. No. 81 at 7-8. Defendants object to Plaintiff testifying remotely at trial and argue that Plaintiff does not satisfy the burden met by Rule 43 of the Federal Rules of Civil Procedure, which provides, in pertinent part

> [i]n every trial, the testimony of witnesses shall be taken in open court, unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise.  The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location.

5

FED. R. CIV. P. 43.

Other courts in this Circuit have permitted incarcerated individuals and people who are unable to enter the United States to testify at trial because of their prior bad acts to testify remotely at trial. *See e.g. Granados-Coreas v. Nassau Cnty.*, No. 18-CV-6092, 2022 WL 16575725, *7 (E.D.N.Y. Nov. 1, 2022) (permitting the incarcerated plaintiff to testify from a remote location); *Vaughan v. Sposato*, No. 11-CV-3097, 2013 WL 5774880, *3 (E.D.N.Y. Oct. 21, 2013) (collecting cases and noting that "[a]llowing an incarcerated plaintiff to appear in person for trial in 'a distant court entails cost and even danger' . . . Thus, with respect to incarcerated plaintiffs, courts 'are increasingly looking to videoconferencing as a viable alternative to live testimony'") (citations omitted); *Monserrate v. K.K. Mach. Co. Inc.*, No. 10-CV-3732, 2013 WL 1412194 (E.D.N.Y. Apr. 8, 2013) (permitting the plaintiff to testify virtually at trial when he is not legally allowed to enter the United States because he was unlawfully present in the United States for more than one year); *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 187-189 (E.D.N.Y. 2010) (permitting the plaintiff to testify virtually at trial because she previously overstayed her tourist visa to the United States and was therefore unable to obtain a visa for trial). Witnesses have also been permitted to testify virtually where it is not impossible for them to travel to the United States, but where they would have significant difficulty in doing so. *See Junjiang Ji. v. Jling Inc.*, No. 15-CV-4194, 2017 WL 6501865 (E.D.N.Y. Dec. 19, 2017).

Defendants argue that Plaintiff has not provided "any evidence or information as to how his remote testimony would be conducted" or other evidence that video testimony would be logistically feasible. Dkt. No. 82 at 2. Defendants have not offered evidence that remote testimony from the Maryland correctional facility where Plaintiff is housed would not be possible.

Given that courts must show incarcerated individuals certain special solicitude, the Court will resolve the question of the facility's technological capacities in Plaintiff's favor, unless there is a showing that the facility is unable to provide access for Plaintiff's remote testimony. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (citing *Houston v. Lack*, 487 U.S. 266, 270-272 (1988)) (noting that "litigants who are incarcerated also receive certain special solicitude"). "As the *Drake* court made clear, involuntary dismissal is 'one of the harshest sanctions at a trial court's disposal,' and thus is 'reserved for use only in the most extreme circumstances.' This case is not sufficiently extreme to merit dismissal." *Mayanduenas v. Bigelow*, 849 Fed. Appx. 308, 311-12 (2d Cir. 2021) (quoting *Drake*, 375 F.3d at 251). The Court finds that Plaintiff's incarceration is an extraordinary circumstance and will permit Plaintiff to participate in the trial remotely. Therefore, the Court need not address Defendants' arguments that delay until after 2035 is a significant duration. *See* Dkt. No. 78-1 at 6.

The Court finds that this factor weighs against dismissal because Plaintiff will not be delayed from prosecuting this trial until after his release from incarceration, so there will be no significant delay in prosecution.

### 2. Notice

The notice factor also weighs against dismissal. The question the Court must answer is whether Plaintiff "received notice that further delays would result in dismissal[.]" *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001) (quotation omitted).

Defendants argue that "Plaintiff has an extensive litigation history," and that "[a]s an experienced *pro se* litigant, Plaintiff knows that any delays could result in the dismissal of his action." Dkt. No. 78-1 at 8. Defendants further contend that "Plaintiff demanded a jury trial in his Complaint, and was aware that the matter could proceed to trial where he would have to

testify in person." *Id.*  Defendants do not point to any documents or docket entries in which Plaintiff was notified of the risk of dismissal for failure to prosecute to support their contentions, and rely on assumptions about Plaintiff's understanding of the rules.

Plaintiff submits that he was aware that if he causes delays he risks the Court dismissing his case, but that "since the use of video trials or video conference has been common I did not believe that relying on the alternative of a video trial than the in person trial would cause a delay." Dkt. No. 81 at 14.  Plaintiff also contends that he has "caused no delays."  *Id.*

It is not clear from either the Local Rules or Federal Rules of Civil Procedure that incarceration is not an exceptional circumstance and good cause reason to appear remotely at trial. Plaintiff did not have explicit notice from a Court order warning him that incarceration would lead to a failure to prosecute, and there is no evidence that he knew, or should reasonably have known, that he would not be able to appear virtually and therefore would be unable to attend trial. Accordingly, the notice factor also weighs against dismissal.  *See Martens*, 273 F.3d at 181 (finding that the notice factor weighed against dismissal where the "failure to prosecute issue was briefly discussed at oral argument on the statute of limitations and laches defenses" but where "[t]he district court did not give the individual plaintiffs express notice that further delays would result in dismissal").

### 3. Prejudice to Defendants

With respect to the third factor, the Court observes that "[p]rejudice to defendants resulting from unreasonable delay may be presumed," *Lyell Theatre Corp.*, 682 F.2d at 39, "because delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult."  *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999).

8

Defendants argue that they will be prejudiced by further delay of trial because Plaintiff's allegations relate to incidents that allegedly occurred between April 2018 and July 2019, and the Defendants and witnesses will have more difficulty recalling events the longer the trial is delayed. *See* Dkt. No. 78-1 at 8.  Plaintiff argues that "there [are] no further delays that will prejudice the Defendants."  Dkt. No. 81 at 15.  Plaintiff points to *Cole-Hoover v. United States*, where the action was dismissed for failure to prosecute because the plaintiff had failed to respond to the court.  *See id.* (citing *Cole-Hoover v. United States*, No. 14-CV-429S, 2017 WL 1425617 (W.D.N.Y. Apr. 21, 2017)).  Plaintiff argues that by contrast, he has "not caused such delays or any delays to have [his] civil suit dismissed.  So truly there are no delays since I am allowed to proceed to video trial."  *Id.*  The Court agrees that, because Plaintiff will be permitted to testify remotely, that there will not be significant delays which would prejudice Defendants.

Defendants contend that they will be prejudiced if Plaintiff is permitted to testify virtually because virtual testimony hinders a jury's ability to assess a witness's credibility.  *See* Dkt. No. 78-1 at 7, 9; Dkt. No. 82 at 2.  While the Advisory Committee Notes to Rule 43 note that the "importance of presenting live testimony in court cannot be forgotten," as long as good cause exists, and it is not merely inconvenient for a witness to attend trial, the exception can be utilized. FED. R. CIV. P. 43.  Here, the Court and jury will be sufficiently able to observe Plaintiff's demeanor and credibility using video conferencing.

Therefore, the third factor also weighs against dismissal.

### 4. Balance between calendar congestion and due process rights

With respect to the fourth factor, Plaintiff submits the following:

> The presiding judge did agree to provide to [me] a [thirty] day period from [January 22, 2024] to respond to the [D]efendants' instant motion.  (The presiding judge as well provided the

> [D]efendants with sufficient due process rights by agreeing to perceive the [D]efendants' instant motion before a decision is rendered.)  This instant response of mine is in opposition to [D]efendants' instant motion.

Dkt. No. 81 at 15.

Plaintiff appears to argue that he has thus far been afforded due process.  Plaintiff also claims that "the judge on the phone status conference of [November 21, 2023] declared that I am entitled to a video trial and this instant motion proceeding is a mere fair due process right for the defendants to be heard and for [me] to respond fairly per the [Fourteenth] Amendment of the United States Constitution."  Dkt. No. 81 at 16.

Defendants argue that "Plaintiff's due process rights have been adequately considered and protected" because he "has received sufficient notice and a fair opportunity to be heard before the case was dismissed" and has not provided "any articulable reason for his failure to appear in court for trial."  Dkt. No. 78-1 at 9.

The Court finds that both Plaintiff's due process rights and the need to avoid congestion of the Court calendar weigh against dismissing the action.  Plaintiff has filed timely responses, promptly notified the Court of his changes of address, and has not caused significant calendar congestion for the Court.  *See* Dkt. Nos. 15, 25, 66, 75, 76.  Because Plaintiff will be permitted to testify remotely, there is no harm to his due process rights.

### 5. Consideration of lesser sanctions

Finally, as to the fifth factor, there is no indication that any lesser sanctions would be effective or necessary.  "While some courts have imposed 'lesser' sanctions, such as fines or monetary sanctions, in an attempt to deter a *pro se* litigant . . . such a sanction would seem to be ineffective to deter this plaintiff because []he has always qualified for *in forma pauperis* status[.]"

10

*Collins v. Cheney*, No. 07-CV-0725, 2007 WL 4300025, *3 (W.D.N.Y. Dec. 3, 2007).  "Not only would a monetary sanction or fine most likely go unpaid, it could also work an unusual hardship on plaintiff."  *Id.*

Defendants acknowledge that a monetary fine would likely "impose an unusual hardship" on Plaintiff, given that he has already filed another application to proceed *in forma pauperis*.  Dkt. No. 78-1.  The Court agrees.  Given that Plaintiff's delay in prosecution is due to his incarceration and not to any ongoing affirmative actions on his part, the Court finds that future warnings, reprimands, or other non-monetary sanctions would not be effective or necessary.

The Court agrees with Plaintiff that, since he will be permitted to testify virtually at trial, there should not be any significant delays in the prosecution of the case, and no sanctions are required at this time.  *See* Dkt. No. 81 at 15-16.  However, should Plaintiff delay in prosecuting this case in the future, sanctions including dismissal for failure to prosecute may be appropriate.

After carefully balancing the five above-described factors, all of which weigh against dismissal, the Court concludes that Defendants' motion to dismiss for failure to prosecute should be denied.

### IV. CONCLUSION

Accordingly, after carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss pursuant to FED. R. CIV. P. 41(b) (Dkt. No. 78) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 16, 2024
       Albany, New York

_Mae A. D'Agostino_
U.S. District Judge