**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DAMILOLA ANIMASHAUN,**

                                        **Plaintiff,**

         **vs.**                                                **9:21-CV-372**
                                                                **(MAD/TWD)**
**J.J. TOOHILL,** *Corrections Officer***; C.O.**
**TOURVILLE; C.O. DAVEY; C.O. PATRICK; Z.**
**HOLMES,** *Corrections Officer***; and W.**
**HOFFNAGLE,** *Corrections Officer***,**

                                        **Defendants.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**MCCARTER & ENGLISH**                     **GREGORY J. MASCITTI, ESQ.**
250 West 55th Street, 13th Floor
New York, New York 10019
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                 **BRIAN W. MATULA, AAG**
**STATE ATTORNEY GENERAL**                 **JAMES D. TAYLOR, AAG**
The Capitol
Litigation Bureau
Albany, New York 12224-0341
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 1, 2021, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983.  *See* Dkt.

No. 1.  In his second amended complaint, Plaintiff alleges that Defendants used excessive force

and failed to intervene in violation of the Eighth Amendment to the United States Constitution,

stemming from an incident that occurred on April 9, 2018, while Plaintiff was housed at Upstate

Correctional Facility ("Upstate C.F.").  *See* Dkt. No. 21.

Trial is scheduled to commence on March 24, 2025.  Currently before the Court is Defendants' second motion for summary judgment.  *See* Dkt. No. 98.[1]

## II. BACKGROUND

Plaintiff's only remaining claims in this case pertain to Eighth Amendment excessive force and failure to intervene claims arising out of conduct alleged to have occurred on April 9, 2018.  *See* Dkt. No. 98-1 at ¶ 2.  Plaintiff was housed at Upstate Correctional Facility from March 29, 2018, through August 16, 2018.  *See id.* at ¶ 3.

Upstate Correctional Facility had an incarcerated individual grievance program for the submission of incarcerated individual grievances during the time that Plaintiff was housed at Upstate Correctional Facility.  *See id.* at ¶ 4.  Plaintiff did not file any grievance concerning the April 9, 2018 incident, or concerning any other matter while he was incarcerated at Upstate Correctional Facility.  *See id.* at ¶ 5.

Plaintiff was housed at Mid-State Correctional Facility from April 2, 2019, through September 12, 2019.  *See id.* at ¶ 6.  Mid-State Correctional Facility had an incarcerated individual grievance program for the submission of incarcerated individual grievances during the time that Plaintiff was housed at Mid-State Correctional Facility.  *See id.* at ¶ 7.  Plaintiff submitted a grievance dated May 30, 2019, which was filed with the Mid-State Correctional Facility grievance office on June 17, 2019, and marked and identified as "MS-24057-19." *Id.* at ¶ 8.  Grievance MS-24057-19 claimed that while housed at Mid-State Correctional Facility, he had not seen a medical specialist concerning his arm and requested as follows: "Please see why I have

---

[1] On January 23, 2023, Defendants moved for summary judgment and argued that Plaintiff's claims failed on the merits.  The Court granted this motion in part.  Notably, however, Defendants did not argue that Plaintiff failed to exhaust his administrative remedies, which is the subject of their second motion for summary judgment.

not seen a specialist." *Id.* at ¶ 9.  Plaintiff submitted an appeal in connection with MS-24057-19 to

the Mid-State Superintendent.  *See id.* at ¶ 10.  On July 17, 2019, the Mid-State Superintendent

issued a determination denying that appeal.  *See id.* at ¶ 11.  Plaintiff did not appeal the

Superintendent's determination of MS-24057-19 to DOCCS's Central Office Review Committee

("CORC").  *See id.* at ¶ 12.

On August 14, 2019, Plaintiff submitted another grievance, which was submitted with the

Mid-State grievance office on August 29, 2019, and marked an identified as "MS-242192-19." *Id.*

at ¶ 13.  Grievance MS-242192-19 claimed that while housed at Mid-State Correctional Facility,

Plaintiff was not receiving the physical therapy to which he claimed entitlement and challenged

assertions by Mid-State Correctional Facility staff that he had refused to attend physical therapy

appointments.  *See id.* at ¶ 14.  Plaintiff requested "can you provide the physical therapy that the

doctor provided by prescription to [me] and which I did not receive yet." *Id.*  Plaintiff appealed

MS-242192-19 to the Mid-State Superintendent, and then to the CORC.  *See id.* at ¶ 15.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at

36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex

Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.    Exhaustion of Administrative Remedies**

### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion in prisoner cases covered by Section 1997e(a) is mandatory.  *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of Section 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).  Furthermore, Section 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.  *See Toussaint v. Rumsey*, No. 9:23-cv-974, 2024 WL 3649918, *3 (N.D.N.Y. June 5, 2024) (citation omitted).

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program ("IGP").  First, a grievance is submitted to the Incarcerated Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(b).  An inmate must submit a grievance "within 21 calendar days of an alleged occurrence." *Id.* at § 701.5(a)(1).  An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence.  *See id.* at § 701.6(g).  The IGRC reviews and investigates the formal complaint and then issues a written determination. *See id.* at § 701.5(b).  Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision.  *See id.* at § 701.5(c).  Finally, upon appeal of the superintendent's decision, the Central Office Review

Committee ("CORC") makes the final administrative determination. *See id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *See Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (*citing, inter alia*, *Porter*, 534 U.S. at 524).

"A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015); *see also Barrett v. Ballard*, No. 9:23-cv-113, 2024 WL 4627511, *3 (N.D.N.Y. Oct. 4, 2024) (citations omitted). "'When a prisoner does not properly exhaust his administrative remedies before filing suit, the action must be dismissed.'" *Barrett*, 2024 WL 4627511, at *3 (quotation omitted). "'[W]here a plaintiff's grievance has not been appealed to and decided by the highest body in the administrative process, the plaintiff cannot be said to have exhausted his administrative remedies and his claims are thus properly dismissed by a court.'" *Id.* (quotation omitted).

Here, as discussed above, the undisputed facts clearly demonstrate that Plaintiff failed to exhaust the DOCCS administrative process. Specifically, the record before the Court indicates that Upstate Correctional Facility had a grievance program during the relevant time period and Plaintiff failed to file any grievances while housed at Upstate Correctional Facility. *See* Dkt. No. 105-1 at ¶¶ 4-5.

Plaintiff claims in opposition to the motion that he should be deemed to have exhausted his administrative remedies by filing grievances in May and August of 2019. *See* Dkt. No. 105 at 10-12. The Court disagrees. As Defendants note, Plaintiff admits that the first of these two grievances was not filed until June 17, 2019 (grievance "MS-24057-19"). *See* Dkt. No. 105-1 at ¶¶ 9-12. The filing of this grievance took place 434 days after the incident and 413 days after his deadline to grieve the April 9, 2018 incident – it was therefore untimely and does not constitute

"proper" exhaustion. *See Burrell v. Zurek*, No. 9:17-CV-0906, 2019 WL 5197519, *15 (N.D.N.Y. June 21, 2019) (holding that "[a] grievance which is denied as untimely does not satisfy the PLRA's exhaustion requirements"); *Adams v. Ohara*, No. 9:16-CV-0527, 2019 WL 652409, *7 (N.D.N.Y. Feb. 15, 2019) (collecting cases). Moreover, Plaintiff has admitted that the May 30, 2019 grievance was not appealed to the CORC. *See* Dkt. No. 105-1 at ¶ 8. As such, this grievance was both untimely and not appealed through the IGP's three-step process; and, therefore, does not satisfy Plaintiff's exhaustion requirement. *See Feliz v. Johnson*, No. 9:17-cv-1294, 2019 WL 5197216, *4 (N.D.N.Y. June 6, 2019) (holding that "if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA") (citations omitted).

Putting aside the fact that grievance MS-24057-19 was untimely and not appealed to CORC, Plaintiff contends that this grievance sufficiently informed prison officials of his grievance because Plaintiff references the April 9, 2018 use-of-force incident as being the cause of his injury. *See* Dkt. No. 105 at 11; *see also* Dkt. No. 105-3 at 6. While it is true that Plaintiff references the use-of-force incident in this grievance, when read in its entirety, the grievance makes clear that he is complaining about the lack of medical care he is receiving at Mid-State Correctional Facility, not about the use-of-force incident that occurred while Plaintiff was housed at Upstate Correctional Facility. Rather, the April 9, 2018 incident was mentioned to provide context as to why Plaintiff needed the medical treatment he was seeking. *See* Dkt. No. 105-3 at 6. Indeed, the only requested relief Plaintiff seeks in this grievance is for the IGC to determine why he has not been permitted to see a "specialist" for the injuries he sustained. *See id.* As such, grievance MS-24057-19, which was filed 434 days after the April 9, 2018 incident at Upstate

Correctional Facility, while Plaintiff was housed at Mid-State Correctional Facility, was insufficient to satisfy his exhaustion requirement.

Plaintiff also argues that grievance MS-24192-19 submitted on August 14, 2019, which referred to grievance MS-24057-19, "also should have prompted officials to investigate the excessive force incident that occurred on April 9, 2018." Dkt. No. 105 at 11-12.  Plaintiff notes that this grievance was responded to and was "not rejected for being untimely or otherwise procedurally improper." *Id.* at 12.  Again, although it is true that Plaintiff references grievance MS-24057-19 in his August 14, 2019 grievance, he does so to make clear that this is not the first time that he has sought additional medical treatment that he was allegedly not receiving at Mid-State Correctional Facility.  *See* Dkt. No. 105-3 at 11-12.  Grievance MS-24192-19 does not in any way attempt to grieve the underlying use-of-force incident that occurred at Upstate Correctional Facility, but instead simply complains about the medical treatment he is receiving at Mid-State Correctional Facility.  *See id.*

"The PLRA's exhaustion requirement is designed to 'afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Porter*, 534 U.S. at 524-25).  "As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.'" *Id.* (quotation omitted).  "Thus, ... if prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.  As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming.'" *Id.* (quotation omitted).

Here, grievances MS-24057-19 and MS-24192-19 were undoubtedly sufficient to place officials at Mid-State Correctional Facility that Plaintiff believed he was receiving inadequate medical care for injuries he had previously sustained. These grievances did not, however, alert prison officials at Mid-State that Plaintiff was attempting to seek redress for the alleged use of excessive force at Upstate on April 9, 2018. Both the content of the grievances and the relief he was seeking made clear that Plaintiff was complaining about his medical treatment while housed at Mid-State and nothing else.

Based on the foregoing, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to the April 9, 2018 use-of-force incident. Accordingly, this action may proceed only if Plaintiff's failure to exhaust administrative remedies may be excused.

### 2. Excusing Plaintiff's Failure to Exhaust

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross*, 578 U.S. at 642. As the Supreme Court stated in *Ross*, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. The plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *See Barrett*, 2024 WL 4627511, at *4 (citation omitted).

9

In the present matter, the Court finds that Plaintiff has failed to establish that administrative remedies were unavailable to him. In fact, the only argument Plaintiff makes on this issue states as follows: "to the extent the Court determines that grievances MS-24057-19 and MS-242191-19 did not suffice to satisfy the exhaustion requirement, the existence of special circumstances that justify Plaintiff's failure to exhaust precludes summary judgment. Specifically, Plaintiff reasonably believed that his reference to the excessive force incident sufficed to satisfy the exhaustion requirement." Dkt. No. 105 at 12. In support of this argument, Plaintiff cites to *Hilbert v. Fischer*, No. 12-cv-3843, 2013 WL 4774731 (S.D.N.Y. Sept. 5, 2013), which in turn relied on *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). Prior to *Ross*, courts in the Second Circuit utilized a three-part framework established in *Hemphill* to determine whether the failure of an inmate to exhaust administrative remedies could be excused. *See Hemphill*, 380 F.3d at 386. The first part involved an assessment whether administrative remedies were in fact available to the plaintiff; the second part instructed courts to consider whether defendants forfeited the affirmative defense of exhaustion by failing to preserve it or should be estopped from raising it because their own actions inhibited the plaintiff's ability to exhaust administrative remedies; and the third part directed courts to determine whether special circumstances existed that justified a plaintiff's failure to exhaust remedies that were available and not subject to estoppel. *See id.* at 686-91; *see also Williams v. Corrections Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (explaining the three-part framework set forth in *Hemphill*).

In *Ross*, however, the Supreme Court addressed and rejected the *Hemphill* framework. Specifically, the Supreme Court held that, aside from the "significant" textual qualifier that "the remedies must indeed be 'available' to the prisoner," there are "no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" *Ross*, 578 U.S. at 639. The Court

stressed "the mandatory nature of [the PLRA's] exhaustion regime," noting that the text of the PLRA and its legislative history refute the existence of a "special circumstances" exception to the statute's exhaustion requirement. *See id.* at 639-41. As such, following *Ross*, an inmate is only excused from the exhaustion requirement when administrative remedies are "unavailable," as set forth above. *See Williams*, 829 F.3d at 122.

Based on this law, it is clear that Plaintiff's "reasonable misunderstanding" of an otherwise available grievance procedure is not sufficient to excuse exhaustion. Plaintiff has failed to argue or put forth any evidence demonstrating that the IGP operated as a "dead end," that the IGP is "so opaque" that it was incapable of use, or that he was thwarted by prison officials from taking advantage of the grievance process. *See Ross*, 578 U.S. at 643-44.

Accordingly, the Court finds that Plaintiff has failed to establish that the grievance procedures were unavailable to him and that he was therefore excused from exhausting administrative remedies.

### 3. Waiver and Estoppel

Plaintiff argues that Defendants have either waived, or should be estopped from asserting, the failure to exhaust defense. *See* Dkt. No. 105 at 7-10. Plaintiff notes that Defendants waited nearly four years, until the eve of trial, to raise this argument, despite the fact that Plaintiff's grievance history was readily available to them. *See id.* at 8. Plaintiff further notes that Defendants failed to raise this issue in their first motion for summary judgment, which was filed before the dispositive motion deadline. *See id.* While the Court shares Plaintiff's frustration in Defendants' failure to raise this issue earlier in this litigation, it nonetheless finds that Defendants have not waived the defense of failure to exhaust.

11

Under Rule 8(c) of the Federal Rules of Civil Procedure, "[i]n responding to a pleading, a party must affirmatively state any ... affirmative defense."  And under Rule 12(h), a party waives any defense listed in Rule 12(b)(2)-(5) "by failing to assert [such a defense] in a pre-answer motion to dismiss or the first responsive pleading." *Panzella v. Cty. of Nassau*, No. 13-CV-5640, 2015 WL 224967, *3 (E.D.N.Y. Jan. 15, 2015).

The Second Circuit has previously ruled that the language in Rule 8(c) is "mandatory," and that failure to plead an affirmative defense "bars its invocation at later stages of the litigation." *Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1985).  More recently, the Second Circuit has announced a more lenient standard.  *See, e.g.*, *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003) (observing that an affirmative defense "normally must be pled in a timely manner or it may be waived"); *Am. Fed. Grp. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998) ("Waiver by failure to plead is indeed the general rule, but it is a rule not applied automatically and as a practical matter there are numerous exceptions to it") (internal quotation marks omitted).  If a defendant omits an affirmative defense from his answer or first responsive pleading, a district court may nevertheless decline to deem the defense waived if the plaintiff had notice and an opportunity to respond.  *See Jones v. Bryant Park Mkt. Events, LLC*, 658 Fed. Appx. 621, 624 (2d Cir. 2016) (citing *Curry*, 316 F.3d at 330-31).

Here, it is undisputed that Defendants raised the affirmative defense of failure to exhaust in their answer.  *See* Dkt. No. 43 at ¶ 18 ("Plaintiff did not properly exhaust his administrative remedies prior to commencing this action and therefore this action is subject to dismissal under the Prison Litigation Reform Act of 1995").  As such, Defendants have complied with Rule 8(c).

In *Villante v. VanDyke*, 93 Fed. Appx. 307 (2d Cir. 2004), the Second Circuit considered an appeal of the district court's consideration of a second summary judgment motion that was

filed after the expiration of the court's deadline for dispositive motions. *See id.* at 310. The

plaintiff argued (1) the defendants waived their exhaustion defense by not raising the defense in

their initial motion for summary judgment; and (2) that the court abused it discretion in allowing

the defendants to move for summary judgment on the ground of failure to exhaust after the

deadline for motions had passed. *See id.* The Second Circuit rejected both arguments. *See id.*

     As to the first argument, the Second Circuit wrote as follows:

> [The plaintiff] first argues that [the defendants] waived the defense
> of failure to exhaust by failing to include it in their first motion for
> summary judgment. We have held that failure to exhaust
> administrative remedies is an affirmative defense to be raised and
> proven by a defendant. *See Jenkins v. Haubert*, 179 F.3d 19,
> 182929 (2d Cir. 1999). Generally, defendants are deemed to have
> waived the defense if they fail to raise it. *See Travellers Int'l., A.G.
> v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).
> We have, however, never required defendants who have properly
> pled the defense in their answer to also file a motion for summary
> judgment on exhaustion grounds in order to preserve the defense.
> Indeed, Federal Rule of Civil Procedure 8(c) requires only that an
> affirmative defense be included in a responsive pleading, such as an
> answer, not that it be the subject of a pretrial motion, and [the
> plaintiff] has pointed to no case suggesting otherwise. Fed. R. Civ.
> P. 8(c). Here, the answer stated, "Plaintiff has failed to exhaust
> administrative remedies." [The plaintiff] has not identified any case
> law establishing that this language was insufficient to assert the
> defense of failure to exhaust administrative remedies under the
> PLRA. Accordingly, we conclude that [the defendants], having
> raised the exhaustion defense in their answer, did not waive the
> defense by failing to include it in their first motion for summary
> judgment.

*Id.* at 308-09.

     As to the second argument, the Second Circuit considered whether the district court was

permitted to consider a claim of exhaustion in the form of a second motion for summary judgment

despite the passing of the dispositive motion deadline. *See id.* at 309. The Second Circuit noted

that a district court may modify its scheduling order "'upon a showing of good cause.'" *Id.*

(quoting Fed. R. Civ. P. 16(b)).  The court found that the decision to permit amendment of the dispositive motion deadline rests within the discretion of the district court and should be granted when "the interests of justice make such a course desirable." *Id.* at 310 (citations omitted).  The Second Circuit concluded that the district court did not abuse its discretion in permitting the second motion for summary judgment and noted that the defendants would have been permitted to raise this defense at trial, which would have resulted in judgment being entered in the defendants' favor.  *See id.*

The facts in *Villante* are remarkably similar to the present matter.  Here, although Defendants did not raise the issue of exhaustion in their initial motion for summary judgment, they asserted it as an affirmative defense in their answer.  While the more prudent course of action would have been for Defendants to raise this issue in their initial motion, their failure to do so is not fatal to their defense.  Plaintiff has been on notice of this affirmative defense since the beginning of this litigation and has not been prejudiced.[2]  If this case were to proceed to trial, Defendants could raise this issue, which would be dispositive of Plaintiff's remaining claims.  In permitting Defendants to bring this second motion for summary judgment, the Court implicitly determined that it was in the interests of justice; a finding that it now states explicitly in this Memorandum-Decision and Order.  Although it clearly would have been preferable for all parties involved for this issue to have been raised at an earlier point in this litigation, the Court agrees

---

[2] Contrary to Plaintiff's assertion, the delay in moving for summary judgment on this issue did not prejudice him by preventing him from taking any "further action to address any grievance-related issues pending the trial in this action." Dkt. No. 105 at 10.  As Defendants note, the defense of exhaustion concerns whether or not, at the time Plaintiff commenced this action, he fully exhausted his administrative remedies.  Plaintiff could not have cured his failure to exhaust since he commenced this action nearly three years after the April 9, 2018 use-of-force incident, and the time for filing a grievance related to that incident, or to seek an extension of time to do so, had long since expired.

with Defendants that this affirmative defense has not been waived. *See Villante*, 93 Fed. Appx. at 308-10; *see also Dawson v. Archambeau*, No. 21-1307, 2022 WL 16748511, *3 (10th Cir. Nov. 7, 2022) (holding that the defendant did not waive his non-exhaustion defense by failing to raise it in his first motion for summary judgment where the affirmative defense was included in his answer) (citations omitted); *Drippe v. Gototweski*, 434 Fed. Appx. 79, 81 (3d Cir. 2011) (concluding that the defendant did not waive his exhaustion defense "by failing to raise it in a timely motion for summary judgment"); *Perez v. Arnone*, No. 3:12-cv-1591, 2018 WL 3596747, *5-6 (D. Conn. July 26, 2018) (finding that exhaustion defense was not waived when it was not raised in the initial motion for summary judgment).

Accordingly, the Court finds that Defendants have not waived their non-exhaustion defense.[3]  Since Plaintiff failed to exhaust administrative remedies that were available to him, the Court grants Defendants' second motion for summary judgment.

## C.    Final Thoughts

Plaintiff commenced this action on April 1, 2021, and subsequently amended his complaint on August 30, 2021.  *See* Dkt. Nos. 1, 11.  In his amended complaint, Plaintiff asserted claims arising from his confinement at both Upstate Correctional Facility and Mid-State

---

[3] Plaintiff also argues that Defendants should be estopped from asserting this affirmative defense because he was led to believe that this defense would not be asserted and has suffered prejudice as a result.  *See* Dkt. No. 105 at 9.  As Defendants note, following the Supreme Court's decision in *Ross*, the concept of "estoppel" is determined within the availability analysis.  For example, an officer's actions or threats to discourage an individual from filing a claim may be relevant to whether the administrative process was truly "available" to the plaintiff.  *See Burrell v. Nelson*, No. 9:22-cv-702, 2023 WL 4373288, *3 (N.D.N.Y. June 13, 2023) (holding that "[t]he court in *Ross* referred to 'availability' as a 'textual exception' to mandatory exhaustion, and 'estoppel' has become one of the three factors in determining availability") (quoting *Ross*, 578 U.S. at 642).  Here, Plaintiff has not alleged that any named Defendant or any other DOCCS employee took any action that would have rendered the administrative process unavailable to him.  As such, Defendants are not estopped from raising this defense.

Correctional Facility. Following this Court's initial review of the amended complaint, only the claims related to the April 9, 2018 incident at Upstate Correctional Facility survived. *See* Dkt. No. 20.

On January 23, 2023, Defendants moved for summary judgment on Plaintiff's remaining claims, arguing that Plaintiff failed to meet the subjective prong to support an Eighth Amendment claim, that certain Defendants were not personally involved in the alleged Eighth Amendment violations, and that the named Defendants were otherwise entitled to summary judgment. *See* Dkt. No. 54-1. In total, that motion was comprised of 349 pages. In a June 22, 2023 Order and Report-Recommendation, Magistrate Judge Dancks recommended that the Court grant in part and deny in part Defendants' motion for summary judgment, which this Court adopted on September 19, 2023. *See* Dkt. Nos. 61 & 72.

Thereafter, on January 22, 2024, the remaining Defendants moved to dismiss this action for lack of prosecution. *See* Dkt. No. 78-1. Defendants argued that dismissal was appropriate because on August 1, 2023, Plaintiff was released from DOCCS' custody and transferred to Jessup Correctional Institution in Jessup, Maryland, where he is serving a twenty-three year sentence for a second-degree rape conviction. *See id.* at 4. On August 16, 2024, the Court denied Defendants' motion, finding that Plaintiff was still actively participating in this litigation and that he could testify remotely at trial. *See* Dkt. No. 84.

These motions and prior decisions by the Court represent a mere fraction of the time that has been wasted on this matter because of the Attorney General's failure to address the issue of exhaustion of administrative remedies earlier in this litigation. If this were the first time that this Court was forced to address the issue of exhaustion on an expedited basis with a trial date

looming, no further discussion would be necessary.  This is an issue, however, that has arisen time and again and has left the Court entirely flummoxed why this continues to happen.

In this case, the fact that exhaustion was not raised at the earliest possible moment is particularly baffling.  Following initial review, the only remaining claims in this action related to the April 9, 2018 incident at Upstate Correctional Facility.  However, as the present motion made abundantly clear, Plaintiff filed NOT A SINGLE grievance while housed at that facility.  The next grievance that Plaintiff filed that was arguably related to this matter was filed 434 days after April 9, 2018, while Plaintiff was housed at Mid-State Correctional Facility.  Even if Plaintiff had worded that grievance to make clear that he was attempting to grieve the April 9, 2018 incident (which he did not), it should have been abundantly clear that the grievance was untimely and that the time to seek an extension of time for such a grievance had long since expired.  Only if Plaintiff could plausibly demonstrate that administrative remedies were unavailable to him, would this case survive a motion seeking dismissal for failure to exhaust.  For reasons unknown, no such motion was made until four-years after this case was commenced and not until the eve of trial.

This Court has on countless occasions granted the Attorney General's Office permission to engage in limited discovery on the issue of exhaustion.  Sometimes granting such limited discovery will result in an early dismissal of a case, while other times the case will survive and an adjudication on the merits will be necessary.  While the Attorney General's Office is obviously aware that this practice is available to it, it is also obvious that there is no clear directive regarding when such limited discovery should be pursued.  If there was such a directive (or one that is communicated to the AAGs representing corrections officers in cases governed by the PLRA), this Court would not be so regularly presented with PLRA exhaustion issues on the eve of trial.

The Supreme Court has stated that the purpose of the PLRA was to reduce the quantity and improve the quality of prisoner suits and, "to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). To further this purpose, the PLRA also provides for early judicial screening of prisoner complaints and prohibits prisoners from proceeding IFP if they have accumulated three strikes. While the courts are perfectly suited to conduct initial reviews and determine whether a prisoner has accumulated three strikes without assistance, administrative exhaustion is an affirmative defense that must be raised by the defendant. The sanction of dismissal for failure to exhaust can only be realized if those who represent prison officials in court are diligent in making sure that exhaustion has occurred. Moreover, the benefits of dismissal for failure to exhaust are not realized when the issue is first raised on the eve of trial.

Because this issue has continued unabated for many years, the Court is directing the Attorney General's Office to provide a copy of this Memorandum-Decision and Order to all attorneys who represent prison officials in Section 1983 matters in federal court. Upon distribution of this Memorandum-Decision and Order, a supervisor from the Attorney General's Office shall file a declaration in this matter certifying that this directive has been complied with. In the future, the Court may reconsider whether to permit such motions on the eve of trial or, alternatively, whether other sanctions should be considered, such as the reimbursement of costs and expenses to assigned *pro bono* counsel.[4]

---

[4] The Court is aware that there have been five different AAGs assigned to this case, and that Mr. Matula filed his notice of appearance in this case on January 27, 2025, after all pre-trial deadlines had expired and a trial date had already been set. *See* Dkt. No. 94. This issue should have been addressed years ago, long before Mr. Matula was assigned this case for trial purposes.

(continued...)

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendants' second motion for summary judgment (Dkt. No. 98) is **GRANTED**; and the Court further

**ORDERS** that the Attorney General's Office shall distribute a copy of this Memorandum-Decision and Order to all attorneys in its office who represent prison officials in Section 1983 matters in federal court; and the Court further

**ORDERS** that upon the distribution of this Memorandum-Decision and Order, a supervisor from the Attorney General's Office shall file a declaration in this matter certifying that this directive has been complied with; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[5]

**IT IS SO ORDERED.**

Dated: March 18, 2025
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4](...continued)

[5] The Court expresses its gratitude to *pro bono* counsel for their work on this matter. *Pro bono* trial counsel are hereby relieved from any further representation in this matter.

19