UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAMILOLA ANIMASHAUN,

                                **Plaintiff,**

   vs.                                               9:21-cv-00372
                                                         (MAD/TWD)

**J.J. TOOHILL, C.O. TOURVILLE,
C.O. DAVEY, C.O. PATRICK,
Z. HOLMES, and W. HOFFNAGLE,**

                                **Defendants.**

_____

**APPEARANCES:**                                  **OF COUNSEL:**

**DAMILOLA ANIMASHAUN**
494292
Maryland Correctional Training Center
18800 Roxbury Road
Hagerstown, Maryland 21746
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          **BRIAN W. MATULA, ESQ.**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action on April 1, 2021, alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Dkt. No. 1. Thereafter, Plaintiff amended his complaint twice. *See* Dkt. Nos. 11, 21. Defendants filed an answer on April 25, 2022. Dkt. No. 43. Since then, Defendants have filed two summary judgment motions. *See* Dkt. Nos. 54, 98. The first

1

motion, filed on January 23, 2023, was granted in part and denied in part. Dkt. Nos. 54, 61, 72. Defendants filed their second summary judgment motion on March 4, 2025, Dkt. No. 98, which this Court granted, disposing of Plaintiff's remaining claims shortly before trial, Dkt. No. 111. Subsequently, on April 14, 2025, Plaintiff filed a motion under Federal Rule of Civil Procedure 60 ("Rule 60 motion"), seeking relief from the judgment. Dkt. No. 117. That motion is currently before the Court.

## II. BACKGROUND

For a full recitation of the facts underlying this case, the parties are referred to Magistrate Judge Thérèse Wiley Dancks's Order and Report-Recommendation dated June 22, 2023. Dkt. No. 61. In short, this action arises from corrections officers' alleged use of excessive force against Plaintiff while he was incarcerated at Upstate Correctional Facility on April 9, 2018. Dkt. No. 21 at 6-9. Plaintiff also initially alleged failure to intervene, failure to train the corrections officers properly, and failure to provide medical care after Plaintiff was injured. *Id.* at 10-15. Some of those claims were resolved through Defendants' first motion for summary judgment. Dkt. Nos. 54, 61, 72. After that motion was decided, only the Eighth Amendment excessive force and failure to train claims remained. Dkt. No. 111 at 2.

In a Memorandum-Decision and order dated March 18, 2025, this Court granted summary judgment to Defendants on those remaining claims. *Id.* at 19. Therein, the Court discussed the incarcerated individual grievance program that was available to Plaintiff at Upstate Correctional. *Id.* at 2. A similar program was available at Mid-State Correctional Facility, where Plaintiff was incarcerated for several months in 2019. *Id.* The Court recognized that although Plaintiff did not file any grievances while at Upstate Correctional, he filed a grievance at Mid-State Correctional, alleging that he had not received any medical attention for the injury he sustained during the April

2018 incident. *Id.* at 2-3. He appealed that grievance to the Mid-State Superintendent, who denied the appeal, and Plaintiff did not appeal that grievance any further. *Id.* at 3. Plaintiff filed another grievance a few months later, alleging that he was not receiving prescribed physical therapy. *Id.* He appealed the second grievance to the Superintendent, and then to the Central Office Review Committee ("CORC"). *Id.*

The Court then acknowledged that the Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies before a plaintiff may bring an action challenging prison conditions. *Id.* at 4-5. Likewise, the Court recognized that Defendants bear the burden of showing that Plaintiff did not exhaust the available administrative remedies before bringing suit. *Id.* at 5. In detail, the Court explained New York's three-step Incarcerated Grievance Program, which was available to Plaintiff. *Id.* at 5-6. Plaintiff argued that he exhausted those remedies by filing the two grievances at Mid-State Correctional. *Id.* at 6. This Court disagreed, holding that the first grievance did not constitute a full exhaustion because it was untimely, and, by Plaintiff's own admission, was not appealed all the way up to CORC. *Id.* at 6-7. Furthermore, Plaintiff's grievance complained about his alleged lack of medical care at Mid-State Correctional, not the use of force incident at Upstate Correctional. *Id.* at 7. Similarly, the second grievance complained solely about Plaintiff's allegedly inadequate medical care at Mid-State Correctional, not the April 2018 incident at Upstate Correctional. *Id.* at 8. The Court credited those grievances as sufficient to put Defendants on notice regarding the quality of Plaintiff's medical care, but they "did not, however, alert prison officials at Mid-State that Plaintiff was attempting to seek redress for the alleged use of excessive force at Upstate on April 9, 2018." *Id.* at 9.

Thereafter, the Court examined whether Plaintiff's failure to exhaust could be excused due to a lack of available remedies. *Id.* Because Plaintiff failed to establish unavailability of such

3

remedies, the Court did not excuse his failure to exhaust. *Id.* at 10-11. Furthermore, the Court evaluated Plaintiff's contention that Defendants should be estopped from raising the exhaustion defense because they did not assert it in their first summary judgment motion. *Id.* at 11. On that issue, because Defendants raised an exhaustion affirmative defense in their answer, they complied with Federal Rule of Civil Procedure 8(c). *Id.* at 12. Additionally, although Defendants should have raised the exhaustion issue much earlier, the defense could still stand because they included it in their answer. *Id.* at 14. By extension, Plaintiff was on notice of the defense from the time the answer was filed and was therefore not prejudiced. *Id.*

In his Rule 60 motion now before the Court, Plaintiff seeks several forms of relief. Dkt. No. 117 at 2-3. Specifically, he asks the Court to "defer judgment" until Defendants provide him with a copy of their answer, which was filed in April 2022. *Id.* at 2; *see* Dkt. No. 43. Because Defendants' answer was properly filed, and because Plaintiff confirmed that he later received a copy of the answer, Plaintiff's first request is now moot. Dkt. Nos. 43, 119.

Additionally, Plaintiff asks that the Court "extend the time to respond or accept [the Rule 60 motion] as a response" to Defendants' second summary judgment motion. Dkt. No. 117 at 1. Plaintiff cites "Rule (b)(1)(B)" for this request. *Id.* The Court assumes that Plaintiff is referring to Federal Rule of Civil Procedure 6(b)(1)(B), which gives the Court discretion to extend a response deadline due to "excusable neglect," with some exceptions. Fed. R. Civ. P. 6(b)(1)(B). Notwithstanding, Plaintiff was previously represented by *pro bono* counsel, who filed an opposition to the second summary judgment motion on Plaintiff's behalf. Dkt. No. 105. Thus, Plaintiff's request that the Court recognize his Rule 60 motion as a response, or, in the alternative, grant leave to file a delayed response, is denied.

4

Relatedly, Plaintiff claims that Defendants' assertion of the exhaustion defense "surprised" him, which warrants relief from the Court's March 18, 2025, judgment under Federal Rule of Civil Procedure 60(b). Dkt. No. 117 at 2-3, 29. For the reasons set forth below, the motion must be denied.

## III. DISCUSSION

**A.    Standard of Review**

Plaintiffs seeking reconsideration of a judgment under Rule 60(b) must meet a "demanding" burden. *Tirelli v. O'Connell*, No. 1:12-cv-01066, 2013 WL 3322608, *4 (N.D.N.Y. July 1, 2013). More specifically, "[a] true Rule 60(b) motion must be predicated on one of five narrow and specific grounds or on a sixth ground which, despite its open wording, has been narrowly cabined by the precedent of [the United States Court of Appeals for the Second Circuit]." *Id.* (quoting *Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004)). Those grounds, as set out in Rule 60(b), are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Furthermore, "[i]n this District, reconsideration of an order entered by the court is appropriate only upon a showing of '(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Tirelli*, 2013 WL 3322608, at *4 (quoting *Pickering-George v. Cuomo*, No. 1:10-CV-0771, 2011 WL 1832560, *5 (N.D.N.Y. May 12, 2011) (collecting cases)). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Importantly, documents filed by *pro se* parties must receive a "liberal[]" construction and greater deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[a] motion for reconsideration is not a vehicle through which a losing party may raise arguments that could have been presented earlier but for neglect, nor is it a device intended to give an unhappy litigant one additional chance to sway the judge." *Pickering-George*, 2011 WL 1832560, at *5 (citations and internal quotation marks omitted).

**B.    The Merits of Plaintiff's Motion**

Plaintiff's Rule 60 motion seems to rely on subsections (b)(1) ("mistake, inadvertence, surprise, or excusable neglect") and (b)(3) ("fraud . . . , misrepresentation, or misconduct by an opposing party"). Dkt. No. 117 at 29. The motion offers several reasons why the judgment should be reconsidered, including unfair surprise after Defendants' late-filed summary judgment motion, lack of access to Defendants' answer due to fraud, Plaintiff's long-term hand injury after the force used against him at Upstate Correctional, and Plaintiff's insistence that he did not fail to exhaust his administrative remedies.

6

First, Plaintiff claims that Defendants' sudden assertion of an exhaustion defense "surprised" him and "prevent[ed him] from obtaining relevant documents and research of case laws to assist [him] in responding to the Defendants' instant motion, with [his] injured hand." *Id.* at 3. Relatedly, Plaintiff argues that Defendants failed to show "good cause" for filing their second summary judgment motion so close to trial. *Id.* at 4. He also laments Defendants' failure to include a copy of their answer alongside their motion (although the answer was previously filed with the Court), which allegedly prevented him from verifying whether Defendants had already asserted an exhaustion defense in their answer. *Id.* at 3-4. Complicating matters, Plaintiff says he lost his original copy of the answer during a move between prison facilities. *Id.* at 3. Plaintiff also expressly claims that he did not fail to exhaust his administrative remedies following the April 2018 Upstate Correctional incident. *Id.* at 11.

In addition to the Rule 60 motion, Plaintiff submitted two supporting filings that the Court will consider. Dkt. Nos. 118, 120. Therein, he claims his injured hand prevented him from filing a timely grievance after the April 2018 incident at Upstate Correctional. Dkt. No. 120 at 1.

### 1. *Plaintiff's Unfair Surprise Claim Under Rule 60(b)(1)*

Plaintiff's most clearly asserted reason for entitlement to reconsideration is his surprise that Defendants briefed the exhaustion defense so late in the litigation. Dkt. No. 117 at 3. However, because a party seeking reconsideration under Rule 60 must show a change in the law, availability of new evidence, or a clear error of law that must be corrected, Plaintiff's reconsideration request on grounds of surprise must fail. *See Tirelli*, 2013 WL 3322608, at *4 (citations omitted).

While Plaintiff repeatedly lambasts Defendants' filing of the second summary judgment motion so close to trial—and the Court agrees with Plaintiff that the exhaustion issue should have

been argued much earlier—he does not allege any change in controlling law or availability of new evidence. On the contrary, he says his hand injury hindered his ability to respond to the motion, which he seems to count as a reason for his surprise. Dkt. No. 117 at 3. Plaintiff even adds that his hand injury was well known to Defendants and "is not a new fact." Dkt. No. 120 at 1. Because Plaintiff's hand injury is plainly not a new fact, it cannot support a reconsideration claim under Rule 60(b)(1).

Plaintiff's argument of surprise based on the lateness of Defendants' motion also must fail. Even though Plaintiff does allege his surprise, the attorneys representing him *pro bono* at the time of the motion filed a response on his behalf. Dkt. No. 105. By extension, Plaintiff does not make any additional allegations that would suggest a change in the law or availability of new evidence.

Thus, the only other avenue for reconsideration based on surprise is the need to correct a clear error of law or manifest injustice in the Court's Memorandum-Decision and Order of March 18, 2025. Importantly, reiteration of previously considered arguments does not rise to the level of establishing a clear error of law or manifest injustice that would warrant reconsideration. *See Cioce v. Cnty. of Westchester*, 128 Fed. Appx. 181, 185 (2d Cir. 2005). To this end, Plaintiff challenges four cases that the Court cited in the Memorandum-Decision and Order. Dkt. No. 117 at 33.

First, Plaintiff challenges the Court's reference to *Villante v. VanDyke*, arguing that factual differences between his case and *Villante* mean a late summary judgment motion should not have been allowed. *Id.* at 30-33. This issue is technically moot because the Court permitted the motion, and the challenged Memorandum-Decision and Order ruled on the motion's merits, not whether it was procedurally proper. Dkt. No. 111. Nevertheless, construing Plaintiff's motion

8

liberally, the Court acknowledges his attempt to raise a clear legal error that might merit reconsideration.

      The Court cited *Villante* first for its recognition that the Second Circuit has "never required defendants who have properly pled the [exhaustion] defense in their answer to also file a motion for summary judgment on exhaustion grounds in order to preserve the defense." *Id.* at 13 (quoting *Villante v. VanDyke*, 93 Fed. Appx. 307, 309 (2d Cir. 2004)).  Then, the Court cited *Villante* for its discussion of district courts' discretion to allow late summary judgment motions. *Id.* at 13-15 (citing *Villante*, 93 Fed. Appx. at 309).  In *Villante*, the Second Circuit determined that the district court did not abuse its discretion by allowing a late motion, as the defendant would have been allowed to raise an exhaustion defense at trial. *Id.* at 14 (citing *Villante*, 93 Fed. Appx. at 310).  Plaintiff correctly points out that the *Villante* court deemed the delayed assertion of the exhaustion defense reasonable because of unsettled law at the time of the late-filed motion. Dkt. No. 117 at 30-33; *Villante*, 93 Fed. Appx. at 310.  However, the law is now settled, and this Court cannot exercise jurisdiction over this case if Plaintiff did not exhaust the administrative remedies available to him. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life"); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citation omitted) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory").

      The Court applied the law from *Villante* to Plaintiff's case and ultimately determined that a late motion was permissible.  Had the Court disallowed the motion and the case proceeded to trial, litigation of the threshold jurisdictional issue would have been delayed even further. *See* Dkt. No. 111 at 14 ("In permitting Defendants to bring this second motion for summary judgment, the Court implicitly determined that it was in the interests of justice; a finding that it now states

9

explicitly in this Memorandum-Decision and Order"). Although Plaintiff has amply expressed his disagreement with that decision and the Court's reliance on *Villante*, he has not shown a clear error of law or manifest injustice that would justify reconsideration.

Second, Plaintiff challenges the persuasiveness of three cases cited parenthetically in the Court's March 2025 Memorandum-Decision and Order. Dkt. No. 117 at 33-35. Those cases come from the Tenth Circuit, Third Circuit, and District of Connecticut, and therefore offer persuasive authority from outside of this jurisdiction. *See Dawson v. Archambeau*, No. 21-1307, 2022 WL 16748511 (10th Cir. Nov. 7, 2022); *Drippe v. Gototweski*, 434 Fed. Appx. 79 (3d Cir. 2011); *Perez v. Arnone*, No. 3:12-cv-1591, 2018 WL 3596747 (D. Conn. July 26, 2018). The Court cited those cases to show consensus among other jurisdictions that failure to raise an exhaustion defense in an initial summary judgment motion does not always waive the defense. Dkt. No. 111 at 14-15. As such, those cases supplement the Court's conclusion and the law set out in *Villante*. As discussed above, Plaintiff does not identify any clear error of law in the Court's application of *Villante* or its conclusion that a defendant may preserve its exhaustion defense by asserting it in its answer. Accordingly, Plaintiff's claim for reconsideration under Rule 60(b)(1) must fail.

   2. ***Plaintiff's Fraud Claim Under Rule 60(b)(3)***

Plaintiff also appears to invoke Rule 60(b)(3), arguing that Defendants fraudulently prevented him from accessing their answer. Dkt. No. 117 at 3-4. The Second Circuit has stated that a Rule 60(b)(3) claim alleging fraudulent restrictions on access to documents cannot stand when the moving party admits it had access to the at-issue documents. *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 175-76 (2d Cir. 2004) (rejecting a defendant's Rule 60(b)(3) claim that the plaintiff fraudulently withheld a copy of a letter, because

the defendant possessed the letter among its own files). Moreover, "[t]o prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *Id.* at 176 (citations and internal quotation marks omitted).

Critically, the response that Plaintiff's *pro bono* counsel filed after Defendants' second summary judgment motion shows that Defendants' failure to append the answer to their motion—whether fraudulent or not—did not prevent full and fair presentation of Plaintiff's opposition to the motion. Furthermore, because the answer was properly filed, that document would have been readily accessible to Plaintiff's counsel through the Court's filing system. Thus, it is of no consequence that Plaintiff did not personally have a copy of the answer at that time. Likewise, aside from conclusory allegations, Plaintiff does not introduce any evidence that Defendants fraudulently hid their answer from Plaintiff or otherwise tried to prevent him from responding to their motion. Plaintiff later received a copy of the answer for his records.

Accordingly, Plaintiff's motion for reconsideration under Rule 60(b)(3) is denied.

### 3. Other Subsections of Rule 60

Due to Plaintiff's *pro se* status and the need to construe his motion liberally, the Court will briefly address the other potential grounds for relief under Rule 60. Subsection (a) allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Also, as explained previously, subsection (b) allows relief from a judgment where new evidence is discovered; the judgment is void; the judgment is "satisfied, released, . . . discharged[,] based on an earlier judgment that has been reversed or vacated[,]" or could not equitably be applied prospectively; or if the Court identifies some other reason that justifies relief. Fed. R. Civ. P. 60(b)(2), (4)-(6).

11

While the Court acknowledges Plaintiff's vociferous opposition to its March 2025 judgment, it does not discern from his motion any claim that a clerical error or mistake occurred. Likewise, the judgment is not void, nor has it been otherwise discharged. Finally, as Defendants mention in their opposition papers, Plaintiff's motion does not identify any newly discovered facts that would warrant reconsideration of the judgment. Dkt. No. 122 at 7-8. Although Plaintiff alleges that he could not write or file a timely grievance regarding the April 2018 incident because his dominant hand was badly injured, *see, e.g.*, Dkt. No. 120 at 1-2; Dkt. No. 123 at 10, Plaintiff admits that the parties have long known about his hand injury, *see* Dkt. No. 120 at 1. Thus, Plaintiff is not entitled to relief from judgment on those remaining grounds under Rule 60.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion for relief from the Court's judgment of March 18, 2025 (Dkt. No. 117), is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 15, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge